IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|   |   |
|---|---|
| IN RE | ) |
| | ) |
| WINDMILL RUN ASSOCIATES, LTD., | ) CASE NO. 15-80319-G3-11 |
| | ) |
| Debtor, | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

The court has held an evidentiary hearing on Fannie Mae's "Motion for Relief from the Automatic Stay" (Docket No. 46). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Windmill Run Associates, Ltd. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 29, 2015.

Debtor owns a 76-unit low income housing tax credit apartment complex in Sweeny, Texas. Photographs of the property show an attractive garden-style complex. (Debtor's Exhibits 1, 2, Fannie Mae Exhibit 7). Prior to the date of filing of the petition in the instant case, the property was managed by

Capstone Real Estate Service ("Capstone"). Frank Fonseca, the president of Debtor's general partner, testified that Capstone resigned as manager, effective on the petition date. He testified that Celtic Property Management ("Celtic"), a company controlled by Mark Breen, began managing the property immediately thereafter.

Fannie Mae has filed a proof of claim, asserting a claim in the amount of $1,767,945.61, secured by the property. (Fannie Mae Exhibit 8). The note upon which Fannie Mae's proof of claim is based calls for Debtor to make monthly payment of $12,899.73. (Fannie Mae Exhibit 1).

Tim Cole, a Member of the Appraisal Institute and certified Texas real estate appraiser, testified that he believes the value of the property, as-is is $1,800,000.

Cole testified that in reaching his estimate of the value of the property, he primarily relied on the income approach. Under the income approach, the amount of estimated gross income a property generates, less operating expenses, is divided by the capitalization rate. This income appears in Cole's appraisal to be annualized. (Fannie Mae Exhibit 7).

Cole testified that he reached an estimate of income based on the historical performance of the property. Cole's appraisal reflects a gross income of $678,960, less an allowance for vacancy and collection loss of $52,493, for an effective

gross income of $626,467.  (Fannie Mae Exhibit 7).

Cole testified that he projected stabilized operating expenses based on actual operating expenses from 2012 through 2014.  Cole's appraisal reflects projected operating expenses of $454,775.  (Fannie Mae Exhibit 7).  Cole testified that he projected net operating income of $171,692.

Cole applied a capitalization rate of 8 percent, resulting in a value estimate of $2,146,151, which Cole rounded to $2,150,000.  Cole's appraisal indicates a range of capitalization rates, based on a survey of market participants for low income housing, of 7 to 8.5 percent.  (Fannie Mae Exhibit 7).

Cole testified that he reduced his appraisal of the property by $350,000, accounting for current physical needs of the property.  He testified that, in making his deduction from the appraised value, he relied on a physical needs assessment ("PNA") provided by Fannie Mae.

Cole testified that he visited the property on August 20, 2015.  He testified that his observations were consistent with what was set forth in the PNA.  He testified that he has no personal knowledge of the cost of repairs asserted by Fannie Mae.

Brenna Hayes, the property manager at the property, testified that the life safety issues identified in the PNA (which appear limited to replacing smoke detectors in several

3

units) have been addressed.

Fonseca testified credibly that the operating expenses of the property have been reduced significantly since Celtic took over as the management company.  He testified that the current annualized expenses are approximately $375,372.

Hayes testified that Celtic has been astute and helpful in providing necessary supplies and reducing expenses.  She testified that grass encroachments on the sidewalks have been cleared.  The court finds that Hayes was credible and capable.

The cost estimates of repair items in the PNA total $338,700.  (Fannie Mae Exhibit 6).  Fonseca testified that the items listed do not accurately reflect needed repairs as of the date of the conclusion of the hearing on the instant motion.  He testified that the costs identified do not accurately reflect the actual cost of the repairs identified.

Item 7 in the PNA addresses the replacement of missing asphalt pavement, and sealing and striping of the pavement, with a cost estimate of $120,000.  Fonseca testified that Debtor has obtained a bid for the work called for under Item 7 for approximately $70,000.

In the instant motion, Fannie Mae seeks relief from stay on two grounds.  First, it asserts that Debtor lacks equity in the property and the property is not necessary for an effective reorganization.  Second, it asserts that the stay

should be lifted for cause, because Debtor cannot provide adequate protection of Fannie Mae's interest in the property. (Docket No. 46). Debtor asserts in pertinent part that Fannie Mae is adequately protected by an equity cushion. Debtor denies the material allegations of the instant motion. (Docket No. 82).

Debtor's most recently proposed plan provides generally for the payment of Fannie Mae's claim at 5.5 percent interest, based on a 25 year amortization, with a balloon payment due after five years. The plan provides for receipt of a debtor in possession ("DIP") loan.

The terms of the DIP loan are not set forth in the proposed plan. They are set forth in a separate motion (Docket No. 93), which has not yet been the subject of an evidentiary hearing. The terms, as set forth in that motion, permit a priming lien for the DIP lender. The DIP lender is identified in the motion for approval of the DIP loan as National Mortgage Investors, LLC. (Docket No. 93). Breen testified that he owns National Mortgage Investors, LLC. Breen was a competent and credible witness.

In the second day of the hearing on the instant motion, counsel for Debtor announced that National Mortgage Investors, LLC is willing to subordinate its lien to Fannie Mae's position. Breen testified that he is willing to subordinate to Fannie Mae's position any lien National Mortgage Investors, LLC gets pursuant

to the proposed DIP loan.

## Conclusions of Law

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if-
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization;

11 U.S.C. §§ 362(d)(1), 362(d)(2).

Section 362(g) of the Bankruptcy Code provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

On the question of Debtor's equity in the property, Cole's estimate of value provides for a small amount of equity for Debtor over the debt owed to Fannie Mae.  However, Cole's estimate comes in at the low end of a range of potential values for the property as Debtor presently uses it, for a low income housing tax credit property.  Simply taking into consideration the bid received by Debtor for repair, replacement, and striping of asphalt would result in an increase of value of $50,000.  Additionally, taking into consideration Fonseca's estimate of the reduced operating expenses of the property, and capitalizing the resulting net operating income at the rate asserted by Cole to be appropriate, would result in an additional increase in value of $993,536.50.[1]

The property is necessary for an effective reorganization.  Debtor cannot reorganize without the property, and has proposed a plan which, at least on its face, and taking into consideration Breen's agreement to fund a DIP loan without a priming lien, is not patently lacking in feasibility.  The court

---

[1]This amount is calculated by taking the difference between the capitalized value of the net operating income in Cole's appraisal (gross income of $626,467, less operating expenses projected by Cole of $454,775, for a net operating income of $171,692, divided by the capitalization rate of 8 percent, for a total of $2,146,151; versus gross income of $626,467, less operating expenses pursuant to Fonseca's testimony of $375,372, for a net operating income of $251,095, divided by the capitalization rate of 8 percent, for a total of $3,138,687.50.

concludes that the stay should not lift pursuant to Section 362(d)(2).

Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of the totality of circumstances.  In re Reitnauer, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); In re Mendoza, 111 F.3d 1264 (5th Cir. 1997).

In the instant case, it appears Fannie Mae is presently adequately protected by an equity cushion.  However, the size of the equity cushion, and the question of whether the equity cushion is increasing or decreasing, is the subject of dispute and widely disparate opinions as to the value of the property.  The court concludes that the stay should be conditioned on terms which will encourage continued adequate protection of Fannie Mae's interest in the property.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on February 4, 2016.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE