

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

ENTERED
09/07/2017

| | | |
|---|---|---|
| IN RE: § | | |
| WINDMILL RUN ASSOCIATES, LTD. § | CASE NO: 15-80319 | |
| Debtor(s) § | | |
| § | CHAPTER 11 | |
| § | | |
| WINDMILL RUN ASSOCIATES, LTD. § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 15-8013 | |
| § | | |
| FEDERAL NATIONAL MORTGAGE § | | |
| ASSOCIATION, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

The Court issues this Memorandum Opinion and accompanying Order to resolve cross motions for attorney's fees that were incurred during the course of a twenty-five day trial. The motions concern fees incurred after August 30, 2016.

### Background

The Court issued a Memorandum Opinion at ECF No. 185 that discusses the facts and background of this adversary proceeding in detail.

Windmill Run Associates, LTD operates an apartment complex as a low income housing property in Sweeny, Texas. It was financed with the benefit of certain tax credits applicable to the low-income nature of the property. The Property secures a loan presently held by Fannie Mae. The parties' dispute arose from Windmill's alleged failure to make certain repairs to the property, which resulted in a demand by Fannie Mae's mortgage servicer, Oak Grove Commercial Mortgage, for Windmill to deposit funds to cover the cost of repairs. Windmill

declined, and Fannie Mae posted the property for foreclosure. On August 29, 2015, Windmill commenced a chapter 11 case.

Fannie Mae filed a proof of claim in Windmill's chapter 11 case asserting a secured claim in the amount of $1,767,945.61. In response, Windmill filed this adversary proceeding alleging several claims which, if successful, would offset Windmill's liability on Fannie Mae's claim.

On August 15, 2016, Windmill's chapter 11 plan was confirmed. Thereafter, a trial commenced to determine the allowed amount of Fannie Mae's prepetition claim and the allowed amount of postpetition fees, charges, and interest. In total, Fannie Mae's requested claim was $2,414,771.03. After twenty-five days of trial, the Court took the matter under advisement and on January 31, 2017, issued its Memorandum Opinion and Judgment allowing Fannie Mae's total allowed secured claim of $2,047,101.76. (ECF No. 186).

Pursuant to a stipulation, the parties deferred requesting attorney's fees for the period between the effective date of Windmill's plan (August 30, 2016) through trial until after the Court issued its Judgment. The parties now request those fees.

### Relief Requested

Windmill requests fees of $285,700.00 and costs of $21,561.65. (ECF No. 194 at 3).

Oak Grove requests $216,781.54 in fees and $4,712.04 in expenses, plus additional amounts if the judgment is appealed. Oak Grove also requests $9,382.25 for the internal administrative costs associated with the travel and time of its representative Bill Johnson to appear and participate in trial. (ECF No. 192).

Fannie Mae requests $411,157.40 in fees and $29,911.38 in expenses. (ECF No. 193 at 5). Fannie Mae requests additional amounts for work performed after January 31, 2017, certain expert witness fees, and specified fees if the judgment is appealed.

## Jurisdiction

The Court possesses "related to" jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court possesses constitutional authority to issue final orders in this adversary proceeding because the parties have consented to the entry of final orders by the Court. (ECF No. 185-2 at 9).

## Analysis

*1. Windmill's fees*

Windmill acknowledges that, because it did not prevail on its breach of contract claim at trial, it has no basis for recovering attorney's fees. Windmill states that it filed its motion for fees "in order to avoid any waiver argument, and in the event that Windmill prevails on its appeals." (ECF No. 194 at 2). As the Court stated at the hearing on the attorney's fees motions, it is only determining the appropriate fees based on the current posture of the case. (ECF No. 227 at 18) ("I'm inclined to rule only on, given the judgment, what should attorney's fees be, and not given the possibilities of a future judgment what should the attorney's fees be, and make clear that the record will preserve for all parties the right to then [request] their attorney's fees post-appeal if there is an alteration of the judgment on appeal."). Accordingly, Windmill is not entitled to recover attorney's fees.

*2. Oak Grove's fees*

Prior to trial, Oak Grove's role vis-à-vis Windmill and Fannie Mae was unclear. In its Memorandum Opinion, the Court determined that Fannie Mae was assigned all rights under the

mortgage from its predecessor, Midland Mortgage. Accordingly, any mortgage servicing provided by Oak Grove was performed on behalf of Fannie Mae. (ECF No. 185 at 23).

Oak Grove acknowledges that, because the Court determined that Oak Grove has no rights to enforce the loan documents on its own behalf, it has no contractual basis for attorney's fees. (ECF No. 185-2 at 33 n. 71) ("[t]he assertion that [Oak Grove's attorney's fees] are reasonable expenses related to the note rests on the incorrect assertion that Oak Grove had a right to enforce the loan documents on its own behalf . . ."). Oak Grove disputes this finding and seeks relief on appeal. The Court previously found that Oak Grove failed to meet its burden to prove entitlement to fees under its loan servicing agreement with Fannie Mae because the servicing agreement was not provided to the Court. (*Id.*). Accordingly, Oak Grove is not entitled to attorney's fees.

3. *Fannie Mae's fees*

   a. *Stipulation regarding fees*

At the close of Windmill's case in chief, counsel for Windmill and Fannie Mae addressed the Court regarding attorney's fees. The exchange is reproduced below:

> Ms. Catmull: With that, Your Honor . . . if the Court rules in [Windmill's] favor with respect to the adversary proceeding, I will be filing a motion for attorney's fees pursuant to Bankruptcy Rule 7054 . . . .
>
> Mr. Cooley: And, Your Honor, just to close the loop on Ms. Catmull's statement regarding Rule 7054, Ms. Catmull and I had a conversation about that recently, and were of the similar opinion that in the interest of trying to simplify what is presently before the Court, that Fannie Mae and Oak Grove also would reserve the request for any fees incurred after the conclusion of the bankruptcy case, i.e. fees incurred in this trial, until after the Court has ruled on the claims presently before the Court on the theory that it would be more efficient for us not to spend time proving up the fees that had been incurred by either party in September, October or November, or I guess December until such time as the Court rules that one or the other or both or neither of us is entitled to such fees.

> At that point it becomes essentially a very simple prove-up, that rather than dealing with it now, we could –
>
> The Court: Okay.
>
> Mr. Cooley: -- probably deal with it very simply. And so – and just for the record, we will be limiting our presentation similarly to fees incurred through the conclusion of the bankruptcy case, August 30, 2016, I believe is the date.
>
> Ms. Catmull: Yes, Your Honor, and so long as all parties reserve their right to, you know, object if they have some objections to the other parties' fees. *I think that one makes the most sense.*

(ECF No. 169 at 99).

Windmill argues that this stipulation concerned only fees resulting from the parties' cross claims for breach of contract. (ECF No. 211 at 13). Because no party prevailed on its breach of contract claim, no party is entitled to fees. (ECF No. 185-2) ("The court's conclusion that both sides are precluded from recovering for breach of contract means that the court's analysis of damages [including attorney's fees] is moot."). Fannie Mae argues that the stipulation unambiguously reserves *any* requests for fees under Rule 7054 incurred after August 30, 2016,[1] until after the conclusion of trial.

The stipulation is unambiguous. By its terms it "would reserve the request for any fees incurred after the conclusion of the bankruptcy case, i.e. fees incurred in this trial, until after the Court has ruled on the claims presently before the Court." (ECF No. 169 at 99). Accordingly, *any* entitlement to fees under the Courts Memorandum Opinion and Judgment was reserved for post-trial determination.

### b. *Fannie Mae's fees were not impliedly denied*

Windmill also argues that Fannie Mae seeks to use the stipulation to recover fees already denied by the Court. (ECF No. 211 at 12). Specifically, Windmill makes much of the fact that

---

[1] The effective date of the Debtor's plan of reorganization.

Fannie Mae requested § 502(c) relief in its § 506(b) motion. Windmill argues that because no such relief was granted in the Memorandum Opinion and Judgment, it was impliedly denied. (ECF NO. 211 at 12). Fannie Mae argues that as a result of the stipulation, the Court only considered fees that accrued prior to August 30, 2016, and that fees accrued during the trial period were to be determined at a later date. (ECF No. 217 at 8).

The Court's Memorandum Opinion addressed Fannie Mae's § 506(b) motion and awarded attorney's fees for work related to (1) its motion for relief from stay and (2) the DIP financing, plan of reorganization, and disclosure statement. (ECF No 185-2 at 29-39). Fannie Mae argues that the reference to § 502(c) in its § 506(b) motion filed before trial commenced is insufficient to determine that the Court denied Fannie Mae's attorney's fees for the trial period, particularly in light of the Rule 7054 stipulation. "Section 502(c) provides a mechanism for estimating the amount of a contingent or unliquidated claim for purpose of its allowance when fixing or liquidation of the claim as determined by the court would unduly delay the administration of the case." 4 COLLIER ON BANKRUPTCY ¶ 502.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Despite the reference to § 502(c), the substance of Fannie Mae's § 506(b) motion does not seek estimation of future attorney's fees. (Case No. 15-80319, ECF No. 276). The Court in its Memorandum Opinion did not address the request for relief under § 502(c).

The parties' stipulation is unambiguous and Windmill's "implied denial" argument is unpersuasive. Moreover, it is inconsistent with the substance of the relief requested by Fannie Mae in its § 506(b) motion. Rarely in law should form prevail over substance. Fannie Mae's request for attorney's fees resulting from the trial was not impliedly denied by the Court in its Memorandum Opinion and Judgment.

c. *Fees attributable to the adversary proceeding*

Paragraph 11 of the note contains a provision requiring Windmill to pay costs and fees in certain instances:

> **Costs and Expenses.** Borrower shall pay on demand all expenses and costs, including fees and out-of-pocket expenses of attorneys and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

(ECF No. 193-3 at 6). The deed of trust contains a similar provision:

> **12. Protection of Lender's Security.**
>
> (a) If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgage Property, Lender's security or Lender's rights under this Instrument . . . then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest . . . .
>
> (b) Any amounts disbursed by Lender under this Section . . . shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "Default Rate", as defined in the Note.

(ECF No. 193-4 at 21). Because Fannie Mae did not recover on its breach of contract counterclaim, any entitlement to attorney's fees is derived exclusively from the loan agreement. In its Memorandum Opinion, the Court addressed Fannie Mae's entitlement to fees under the loan agreement when it considered Fannie Mae's § 506(b) request for fees attributable to the pre-August 10, 2016, portion of this adversary proceeding. The Court disallowed all fees to Fannie Mae related to the prosecution of this adversary proceeding:

> With respect to fees billed for litigation of the instant adversary proceeding, in the absence of prevailing on a breach of contract, thus entitling fees, those fees are not reasonably costs of collecting the note or enforcing loan documents.

(ECF No. 185-2 at 37). The Court also stated that Fannie Mae was precluded from recovering fees because it was in material breach of the loan agreement. (ECF No 185-2 at 30 n. 68).

The Court's conclusion that Fannie Mae may not recover fees related to the adversary proceeding is the law of the case and resolves the outcome of the present issue. *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) ("The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."). While a court *may* revisit its prior decision (or the decision of a transferor court), "as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1888). Though the fees now requested were not addressed in the Court's January Memorandum Opinion and are therefore not issues actually decided for purpose of the law-of-the-case doctrine, the conclusion that Fannie Mae may not recover fees for litigating this adversary proceeding remains determinative. *See Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (stating that law of the case applies only to issues actually decided). The Court will not allow Fannie Mae to recover fees for its work in the same adversary proceeding for which it previously denied fees.

Fannie Mae incurred fees in defense of its own bad faith conduct. By way of example, the Court previously found:

> Oak Grove and Fannie Mae worked together in bad faith to drive toward a foreclosure of [Windmill's] interest in the property. This drive was not motivated solely by a desire to ensure that the property was well-maintained. Rather, Fannie Mae and Oak Grove perceived an opportunity to remove the property from the

> restrictions of the LURA, and to trigger recourse liability for [Windmill's] principals by foreclosing. This would increase the value of the property by enabling the new owner of the property to charge market rents. (ECF No. 185 at 3).
>
> . . .
>
> Fannie Mae and Oak Grove manufactured an opportunity to foreclose . . . . (*Id.* at 39).
>
> . . .
>
> It is a reasonable inference that Fannie Mae and Oak Grove sought to increase leverage and, since Fannie Mae deemed the filing of the instant adversary proceeding an "act of war," this radical cost increase was a warlike response. (*Id.* at 36).
>
> . . .
>
> Fannie Mae was obstructing the resolution process through its tactics based both on its refusal to consider [Windmill's] prepetition position that Breen was willing to fund repairs to the property as long as the funds were used for that purpose, and also it determination that the instant adversary proceeding was an act of war, that justified its explosion of legal fees rather than negotiation . . . . (ECF No. 185-2 at 41).

The Court denied Fannie Mae's pre-confirmation fees resulting from this adversary proceeding because (1) they were not reasonably costs of collecting the note or enforcing loan document and (2) Fannie Mae was in material breach of the loan agreement. In addition, to the extent Fannie Mae incurred fees in the adversary proceeding to defend its own bad faith conduct; those fees are not reasonably related to enforcement of the loan document or reasonable costs of collecting the note. *See F. R. Hernandez Const. & Supply Co. v. Nat'l Bank of Commerce of Brownsville*, 578 S.W.2d 675, 677 (Tex. 1979) ("[T]he rule that has emerged in Texas is that the holder of the note is not entitled to recover the full contractual amount if the obligor on the note shows that the fee should be limited to an amount that is reasonable under the circumstances.").

The Court sees no reason to depart from its original conclusion merely because the fees now requested accrued after August 30, 2016. *See Christianson*, 486 U.S. at 817.

### d. *Fees attributable to the 506(b) Motion*

Fannie Mae was entitled to some portion of fees related to its 506(b) motion. Fannie Mae sought allowance of $646,825.042 for postpetition charges, fees, and interest. The Court allowed certain fees in a reduced amount for Fannie Mae's work related to its motion for relief from stay and its participation with respect to the DIP financing, plan, and disclosure statement. (*Id.* at 31, 34). The Court limited Fannie Mae's 506(b) claim to $308,338.42. (ECF No. 185-2 at 41). Some of the discount was attributable to the Court's denial of a substantial portion of Oak Grove's attorney's fees, which were included in Fannie Mae's 506(b) motion.[2]

The trial in the adversary proceeding and the trial regarding Fannie Mae's 506(b) motion occurred contemporaneously. (ECF No. 95 at 4). Fannie Mae is not entitled to fees for defending Windmill's claims in the adversary proceeding or for its fees attributable to its counterclaims. Nevertheless, it is entitled to that portion of the fees attributable to prosecuting its 506(b) motion.[3] Accordingly, the Court must segregate the fees accrued at trial attributable to Fannie Mae's 506(b) motion. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 213 (Tex. 2006) (if any attorney's fees relate to a claim for which such fees are unrecoverable, recoverable fees must be segregated from unrecoverable fees).

Fannie Mae requests $411,157.40 in fees and $29,911.38 in expenses that have accrued since August 30, 2016. (ECF No. 193 at 5). This amount includes both time billed for litigating the adversary proceeding and the 506(b) motion. The Court's Memorandum Opinion denied fees

---

[2] Oak Grove requested $137,166.50 in attorney's fees of which the Court awarded $8,131.50. Fannie Mae requested $375,412.00 for attorney's fees of which the Court awarded $248,817.00. (ECF No. 185-2 at 38-39).

[3] Section 506(b) is typically not the appropriate mechanism for seeking fees on a post-confirmation basis. *In re 900 Corp.*, 327 B.R. 585 (Bankr. N.D. Tex. 2005) ("[S]ection 506(b) . . . authorizes the recovery of fees and expenses only from the date of the bankruptcy filing through the date of confirmation, and thus cannot provide the basis for any recovery of fees and expenses first incurred post-confirmation."). However, the 506(b) award Fannie Mae seeks was not first incurred post-confirmation. The fees concerned post-petition, pre-confirmation conduct that was the subject of a post-confirmation trial. The fees at trial attributable to the 506(b) motion are not rendered non-compensable simply because they were incurred post-confirmation.

for certain categories of work that, though related to the 506(b) motion, were not compensable because they were found to be unreasonable. The Court concluded that (1) Fannie Mae's counsel was only entitled to bill travel at one-half of the normal rate (ECF No. 185-2 at 38); (2) no fees were allowed related to the issue of valuation for the trial on the motion to lift the stay (*Id.* at 32); and (3) Fannie Mae was not entitled to fees for that portion of its 506(b) motion that requested fees on behalf of Oak Grove. (*Id.* at 33 n. 71). These conclusions remain applicable to Fannie Mae's present request for fees.

Upon review of the trial record and fee application, Fannie Mae is entitled to $199,430.25[4] in attorney's fees and $10,808.67 in expenses related to litigating its 506(b) motion.[5]

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 11, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[4] $10,000.00 of the fees awarded regard fees incurred between January 31, 2017, and the date of this Memorandum Opinion and accompanying Order.

[5] Exhibit A to this Memorandum Opinion details the Court's conclusions regarding compensable fees and expenses attributable to the 506(b) motion.